## CLARK & A. v. NICHOLS & A.

In 1864 a school district was indebted to the petitioners. In 1866 it was united with other districts, and ceased to hold district meetings. In 1870 the petitioners recovered judgment upon their claim, counsel having appeared for the district. In 1872 a voter in the original district petitioned the selectmen to fill vacancies in the district offices, which they refused to do. *Held*, that the judgment must be regarded as valid, and as establishing the fact that the district was capable of being sued, and that a mandamus must issue commanding the selectmen to fill said vacancies.

PETITION, by Daniel Clark and Isaac W. Smith against Josiah H. Nichols, Ezra C. Mudgett, and William T. Morse, selectmen of Weare. The facts sufficiently appear in the opinion of the court.

*Clark* and *Smith, pro se.*

*Cross & Burnham,* for the respondents.

BELLOWS, C. J.   The petition is for a mandamus to require the selectmen of Weare to appoint a clerk, prudential committee, and moderator to fill the vacancies in those offices in school district No. 11 in Weare.

It proceeds upon the ground that this district was indebted to the petitioners on August 4, 1864, and that afterward they brought their suit against the district on said claim, and at the January term, 1870, of the supreme judicial court, recovered judgment against the district for $33.60 and costs taxed at $37.98, upon which execution had been issued and returned unsatisfied, and an *alias* execution is now issued and not returned.

The petitioners seek to have those offices filled, that they may take the necessary steps to obtain satisfaction of their execution, under sections 4 and 5 of the Gen. Stats., ch. 220,—that is, by leaving with such prudential committee a copy of the execution, that he may pay the same, or call a meeting of the voters of the district to raise by their vote the necessary means to pay it, as provided in section 5.·

The petition alleges that said district still remains a body corporate, for the purpose of maintaining and defending suits, receiving and conveying property, voting taxes to pay its debts, and settling its concerns, although in 1866 it was united with districts Nos. 12 and 23, forming the Clinton Grove union school district.   The petition also alleges that those offices are vacant, and that, although a petition was presented by Moses A. Hodgdon, a resident and voter in district No. 11, to said selectmen on April 27, 1872, requesting them to fill those vacancies, they have ever since neglected and refused to do it.

The answer admits that the records of said court show such a judgment in favor of the petitioners, but alleges that it was void because at that time there was no such school district as No. 11, and no officers or agent of such district; that the district was dead, so far as any action for or against it could be had, although they admit that the names of George, Foster & Sanborn appear on the docket as attorneys for said district from the entry of the action till judgment.   They, in terms, deny that these vacancies exist, but admit the presentation of Hodgdon's petition, and the neglect of the selectmen to fill the offices.

As to the validity of the judgment, it cannot now and in this way be controverted; but it must be assumed, on the facts before us, that George, Foster & Sanborn were duly authorized to appear as attorneys for the district—*Bunton* v. *Lyford,* 37 N. H. 512 — and the judgment must therefore be regarded as valid and binding on the district; and it must also be regarded as establishing the fact that district No. 11 was a corporate body, and capable of being sued.

The answer to this is, that school districts Nos. 11, 12, and 23, in said town of Weare, sometime prior to July 6, 1866, by a vote of the districts, united and formed one district, and that this union was ratified

and confirmed by an act of the legislature of July 6, 1866, making a new district known as the Clinton Grove union school district. This appears to be the fact; and yet, by law of July 13, 1854, ch. 1540, revised and reënacted in Gen. Stats., ch. 78, sec. 24, district No. 11 remains " a body corporate so long as necessary for the purpose of maintaining and defending suits, receiving and conveying property, voting taxes to pay its debts, and settling its concerns."

The judgment then establishes the fact that district No: 11 was a corporate body, capable of contracting, when the debt for which judg- was rendered was created; and, under the law which is quoted, its existence continues for the purpose of raising the means of satisfying this judgment. The mode of doing that is through the prudential committee of that district; but if that office is vacant, it becomes necessary to fill the vacancy, and that may properly be done by the selectmen, who are empowered, by section 13 of ch. 79, Gen. Stats., to fill a vacancy in the offices of clerk or prudential committee.

The petition alleges that a vacancy exists in those offices; and, although the answer formally denies it, yet in another part of the answer it is alleged, in reference to the suit aforesaid, that there was no officer or agent of the district; and the reason for neglecting to fill the vacancies upon the application of a voter is alleged to be, that the selectmen were in doubt whether there was any such district, or what part of the original district No. 11, if any part, would be liable to pay this claim, and not that there was no vacancy; and it was admitted that, since the organization of the new union district, there had been no meeting for the choice of officers in district No. 11. It is evident, therefore, that vacancies do exist in those offices.

It is urged by the counsel for the respondents, that district No. 11 ceased to be a corporate body on the formation of the Clinton Grove union school district; but, for the reasons assigned, we think otherwise. They also urge that, on the division of district No. 11 and the formation of the new union district, there ought to have been an apportionment of the debts. This, we think, is quite probable,—or, at least, when district No. 11 voted to unite with Nos. 12 and 23 and form one district, it ought to have made provision for its debts. However that may be, the rights of these petitioners could not be affected by such changes, but they still had the right to look to the old corporate body for the payment of its debt. It appears in evidence, that in September, 1866, a portion of district No. 11 was severed from it and annexed to district No. 8. Whether that portion would continue to be liable with the rest of the old district for these debts is not a question here, although it would be the safer way to appoint to the offices in question persons residing in the part of district No. 11 not annexed to No. 8.

Upon these views, the parties having been fully heard, a peremptory mandamus should issue, commanding the respondents to appoint a clerk and prudential committee for school district No. 11 in Weare, to fill the vacancies in those offices.